UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

| | | |
|---|---|---|
| AUBREY STANLEY #257143, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:08-cv-288 |
| | ) | |
| v. | ) | HON. R. ALLAN EDGAR |
| | ) | |
| RANDY OLLIS, et al., | ) | |
| | ) | **OPINION** |
| Defendants. | ) | |
| | ) | |

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

I.      Factual Allegations

Plaintiff Aubrey Stanley #257143, an inmate at the Alger Maximum Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Corrections Officer Randy Ollis, Assistant Resident Unit Supervisor Thomas Salo, Warden David Bergh, Inspector Unknown Contraras, Grievance Coordinator Wayne Trierweiler, Deputy Warden Daniel Lesatz, Resident Unit Officer Unknown Derusha, Unknown Delinsky R.N., Charles Scott R.N., Cedar Unit Assistant Resident Unit Supervisor Keith Castello, Psychologist Paul Eyke, Acting Lieutenant Unknown O'Dell, Resident Unit Manager T. Lindemuth, Sergeant T. Lee, Sergeant M. Rondeau, Resident Unit Manager Douglas Mason, Lieutenant Mark Arkens, Corrections Officer Unknown Parkilla, Corrections Officer Unknown Santure, Resident Unit Manager K. Hill, Corrections Officer Unknown Warzak, Corrections Officer Unknown Betterly, Acting Hearing Investigator Kelly Johnson, MDOC Director Patricia Caruso, and Administrative Hearing Officer Linda Maki.

Plaintiff alleges in his complaint that on October 13, 2007, Defendants Mason and Ollis loudly discussed Plaintiff's hemorrhoids outside his cell so that everyone on the unit heard Plaintiff's diagnosis.  When Plaintiff threatened to write a grievance on Defendant Ollis, he said that he did not care.  However, the next day, Defendant Ollis apologized to Plaintiff for discussing Plaintiff's medical issues in the unit.  Plaintiff filed a grievance on this matter  On October 16, 2007, Defendant Ollis filled out Plaintiff's administrative segregation behavior review sheet, recommending that Plaintiff be kept in administrative segregation for a longer time.  However, Defendant Ollis noted that Plaintiff was not a problem and kept his cell clean.  Defendant Salo

- 2 -

recorded that approval from the Regional Prison Administrator was required before Plaintiff could be reclassified because of Plaintiff's assault on staff which occurred at the Chippewa Correctional Facility on January 14, 2006.

During October of 2007, Plaintiff wrote grievances on Defendants, to no avail.  On January 26, 2008, Plaintiff overheard Defendant Ollis telling other prisoners that he was a rat and offering to give extra trays to a prisoner who would "snuff" Plaintiff.  Plaintiff filed grievances on Defendant Ollis, and on February 7, 2008, Defendant Ollis threatened to write a ticket on Plaintiff.  On February 12, 2008, Defendant Ollis told Plaintiff to open his food slot in order to receive writing materials, but when Plaintiff grabbed the paper, Defendant Ollis refused to let go and then told Plaintiff that he was going to write a ticket on him for bumping his finger on the door and injuring Defendant Ollis.  Defendant Ollis continued to harass Plaintiff by making various threats and using racial slurs, and on February 12, 2008, Plaintiff requested mental health treatment.  Plaintiff was given an appointment for February 20, 2008.  Plaintiff was subsequently harassed about being sensitive and a "fag" by Defendants Ollis and Salo.  Plaintiff filed grievances and complaints.

On February 29, 2008, Plaintiff requested case citations from the law library, but the law librarian refused to process the request because someone had written "rat, homosexual, fuck boy and snitch" on the form after Plaintiff submitted it.  Plaintiff filed a grievance and appealed to step III.  On March 18, 2008, Plaintiff submitted a mental health care request, complaining of the harassment by Defendants Ollis and asking if Defendant Eyke had reported the harassment to Defendant Contreras.  On March 21, 2008, Defendant Eyke responded by stating that he referred Plaintiff's complaints to Defendant Contreras, as well as the Resident Unit Manager and the

Assistant Resident Unit Supervisor, and that he had also informed them of Plaintiff's threats against Defendant Ollis.

On March 31, 2008, Plaintiff received a hearing on a misconduct ticket. During the hearing with Defendant Maki, Plaintiff noticed Defendants Ollis making faces at him. Plaintiff claims that Defendant O'Dell observed the incident, but when Plaintiff confronted Defendants regarding the issue, Defendant O'Dell denied seeing anything. Defendant O'Dell then told the guards to take Plaintiff to his cell. Defendants Fleury and McDonald then forced Plaintiff up the steps. Plaintiff concedes that he resisted by putting his foot on the steps, while still talking to Defendant O'Dell in a loud voice. Dale Samansky then joined Defendants and forced Plaintiff back to his cell. Plaintiff subsequently received misconduct tickets for assault and battery and for misuse of state property for allegedly covering his cell window. Plaintiff received a major misconduct ticket for disobeying a direct order on April 1, 2008. Plaintiff states that on April 1, 2008, Defendants Santure, K. Hill, Warzak, and Betterly made statements regarding Plaintiff's major misconduct.

On April 1, 2008, a chemical agent was used on Plaintiff while he was in his cell, despite the fact that his hands were in wrist restraints and Defendant Delinsky was standing at the door of Plaintiff's cell holding his asthma inhaler. Plaintiff states that while he was having difficulty breathing, staff rushed into his cell. Plaintiff saw Defendant Hill holding the riot shield, and felt someone smash the right side of Plaintiff's face into the cement floor, while another party kneed Plaintiff's left thigh. Leg-irons were placed on Plaintiff and he was taken outside the cell and escorted outside the building. Defendant Scott flushed Plaintiff's eyes out and gave Plaintiff several puffs on his asthma inhaler. Plaintiff was then taken to another unit through the snow in his socks. Plaintiff was placed in the shower and was told that he would be sprayed again by Defendant Arkens

if he did not comply with orders.  Plaintiff claims that the handcuffs caused skin to be scraped from his arms and that his face was swollen where staff smashed his face into the floor.  Plaintiff requested a critical incident report or an accident report, as well as pain medication.

Plaintiff states that while he was being taken from the showers, one of the guards rubbed his back and buttocks in a sexual manner and that when he told Defendant Arkens that someone was touching his "ass," Defendant Arkens merely stated that men had "buttocks," not "asses."  Plaintiff wrote a complaint to Defendant Trierweiler, as well as to Defendant Lesatz.  In addition, Plaintiff submitted health care requests for pain medication and medical attention on several occasions in April of 2008, which were responded to by Defendants Scott and Galloway.

On May 1, 2008, Defendant Ollis retaliated against Plaintiff for filing grievances by falsely accusing Plaintiff of threatening him with the contents of a little white bottle of shampoo.  Defendant Ollis wrote a misconduct on Plaintiff.  Plaintiff later told Defendant Derusha that he did not have a problem with any staff other than Defendant Ollis.  Defendant Derusha told Plaintiff that if he had a problem with Defendant Ollis, he had a problem with all of the staff.  Plaintiff later complained to Defendants Resident Unit Officer D. Samansky and Joe Saurdini, who told Plaintiff not to worry about Defendant Derusha's comments.

On May 2, 2008, Defendant Ollis opened Plaintiff's food slot and pushed the food cart into it, stating:

> Next time, you'll think twice about writing grievances, sooner or later, you will do the right thing, I'm going to be your daddy.  It's time for you to get off the tit and be a man boy, you're too emotional, we go do this every day, next time I'm going to have a sticker going across the slot.

- 5 -

Plaintiff did not eat his meal or respond in any way.  Plaintiff states that later that day, during rounds, Defendant Ollis stated, "You ain't go get [sic] a ride out on me Stan, you can't starve yourself to ride out."

Defendant Ollis later told Plaintiff that he would be continued on upper slot restriction and that he would "deal with" Plaintiff if necessary.  Defendant Ollis then falsely announced to the unit that Plaintiff had eaten his lunch.  Plaintiff filed a grievance on Defendant Ollis.  On May 7, 2008, Plaintiff wrote to Defendant Johnson and requested documents in order to prepare for an administrative hearing.  Defendant Johnson responded by stating that hearing packages could only be provided for misconducts and appeals.

On May 7, 2008, Plaintiff submitted a health care request form, seeking a copy of his HIV test results and complaining of difficulty breathing "since [he] was gassed."  On May 9, 2008, Plaintiff missed his callout because Defendant Ollis did not announce that he was there to take Plaintiff to health services.  Plaintiff wrote a new health care request and wrote a complaint regarding the matter to Defendant Salo.  On May 12, 2008, Plaintiff had a hearing on a threatening behavior misconduct written by Defendant Ollis on May 1, 2008.  Plaintiff was not allowed to submit copies of grievances and written complaints against Ollis as evidence that the ticket was retaliatory.  Defendant Maki found Plaintiff guilty of the major misconduct.

Plaintiff alleges that on May 14, 2008, he wrote a grievance on Defendant Ollis regarding an incident that occurred on May 9, 2008.  Plaintiff states that on that date, Defendant Ollis stuck his arm through Plaintiff's food slot and waved Plaintiff's food loaf in the air, laughing and asking Plaintiff whether he wished to eat it.  Plaintiff's grievance was denied, as was his request that staff review video.  On May 17, 2008, Plaintiff wrote another grievance on Defendant Ollis because

no one came to Plaintiff's cell to offer him his meals.  On May 20, 2008, Plaintiff wrote a medical kite to health services stating that he was still having problems with his asthma as a result of being gassed.  On May 23, 2008, Plaintiff sent a two page request for an internal investigation for alleged use of force and complaint of sexual assault by MDOC employees to Defendant Caruso, but received no response.  On May 26, 2008, Defendant Ollis opened Plaintiff's food slot and banged the tray against it and announced "tray."  Plaintiff told Defendant Ollis that if he wasn't at his door to receive the tray, that meant he did not want it.  Defendant Rondeau then stuck his head around the corner and told Plaintiff that he had better not write anymore grievances on Defendant Ollis for failing to feed him.  Plaintiff responded that his grievances were not about not being fed, but rather were about harassment and retaliation.  Plaintiff wrote a grievance on Defendants Ollis and Rondeau for harassment.  Plaintiff also wrote a health care request, asserting that Defendants Ollis and Rondeau were causing him to experience stress and elevated blood pressure.

On May 31, 2008, Defendant Ollis announced to the entire unit that he was shutting the wing down because of Plaintiff.  Defendant Ollis subsequently denied another prisoner's request for toilet paper, stating that it was because of Plaintiff.  Plaintiff filed a grievance, which was denied at each level.  On June 2, 2008, Defendant Ollis was passing Plaintiff's cell and told another prisoner, "you can help Stan, he has no rhythm and he's low on self-esteem."  On June 3, 2008, Defendant Ollis banged on Plaintiff's window shutter while signing Plaintiff's door card in order to irritate Plaintiff.  Plaintiff states that it is well known that he doesn't eat chow when Defendant Ollis is serving, but Defendant Ollis still opened Plaintiff's food slot and banged the food tray down on the open slot when Plaintiff failed to get out of bed.

Plaintiff states that when Defendant Ollis came to pick up law books, his legal material was sticking out of the door.  Defendant Ollis stated, "law books bitch."  Plaintiff did not respond and Defendant Ollis said, "Come on superhead bitch, rat."  Defendant Ollis continued to call Plaintiff "bitch" and "rat," and to say that he was Plaintiff's "daddy."  Plaintiff sent a written complaint to MDOC Deputy Director Straub, who forwarded the complaint to Defendant Bergh.  Plaintiff also filed a health care request regarding the stress he was suffering because of Defendant Ollis.

Plaintiff states that Defendants Lee and Lindemuth retaliated against Plaintiff for using the grievance system by alleging that Plaintiff had misused the grievance procedure in order to harass Defendant Ollis.  Plaintiff sent a criminal complaint regarding the conduct of Defendant Ollis to Assistant Attorney General Peter Govorchin, and sent a copy to Deputy Director Straub.  In addition, Plaintiff filed various grievances and complaints.

Plaintiff alleges that on September 12, 2008, he accused Defendant Eyke of sharing confidential conversations with Defendant Ollis because after Plaintiff's sessions, Defendant Ollis engaged in harassing behavior such as banging Plaintiff's window shutter while signing the door card.  On September 21, 2008, Plaintiff submitted a health care request seeking information about the effect of gas on his asthma.  On September 22, 2008, Mary Rose Galloway, R.N., responded to the kite and sent Plaintiff a pamphlet regarding asthma.

Plaintiff appears to be claiming that Defendants violated his rights under the First, Eighth and Fourteenth Amendments.  Plaintiff seeks compensatory and punitive damages, as well as equitable relief.

II.    <u>Failure to state a claim</u>

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As noted above, Plaintiff appears to be claiming that Defendants violated his rights under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

This is a two-part test involving both an objective and a subjective element.  First, Plaintiff must establish that he is being denied a single, identifiable necessity of civilized human existence.  *Wilson*, 501 U.S. at 298, 111 S. Ct. at 2324.  In *Rhodes*, the Supreme Court explained

> In *Estelle v. Gamble*, *supra*, we held that the denial of medical care is cruel and unusual because, in the worst case, it can result in physical torture, and even in less serious cases, it can result in pain without any penological purpose.  In *Hutto [v. Finney*, 437 U.S. 678, 98 S. Ct. 2565 (1978)], the conditions of confinement in two Arkansas prisons constituted cruel and unusual punishment because they resulted in unquestioned and serious deprivations of basic human needs.  Conditions other than those in *Gamble* and *Hutto*, alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities.  Such conditions could be cruel and unusual under the contemporary standard of decency that we recognized in *Gamble*.  But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional.  To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.

*Rhodes*, 452 U.S. at 347, 101 S. Ct. at 2399.

The Eighth Amendment is concerned only with "deprivations of essential food, medical care or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes*, 452 U.S. at 348, 101 S. Ct. at 2400.  One court has included such basic human needs as minimally adequate food, clothing, shelter, sanitation, medical care, and personal safety within the "core" requirements of the Eighth Amendment.  *Grubbs v. Bradley*, 552 F. Supp. 1052, 1222 (M.D. Tenn. 1982).  Plaintiff cannot rely upon the overall conditions of his confinement to establish an Eighth Amendment violation unless he can demonstrate that, in combination, the conditions of his confinement deprived him of a single, identifiable human need.  *Wilson*, 501 U.S. at 304, 111 S. Ct. at 2327.

The subjective component of the deliberate indifference standard "mandate[s] inquiry into a prison official's state of mind."  *Wilson*, 501 U.S. at 298-299, 111 S. Ct. at 2324.  Only that conduct which is wanton or deliberately indifferent to Plaintiff's needs constitutes conduct subject to scrutiny under the Eighth Amendment.  *Id.* at 302-303.

> Not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny, however.  ... [C]onduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety.  This reading of the Clause underlies our decision in *Estelle v. Gamble*, *supra*, at 105-106, which held that a prison physician's 'negligen[ce] in diagnosing or treating a medical condition' did not suffice to make out a claim of cruel and unusual punishment.  It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.

*Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084 (1986); *see also Wilson*, 501 U.S. at 298-299, 111 S. Ct. at 2324.

Conduct which is negligent or even grossly negligent does not violate the Eighth Amendment.  *See Walker v. Norris*, 917 F.2d 1449, 1454 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 881 (6th Cir. 1988).  In *Whitley v. Albers*, 475 U.S. 312, 106 S. Ct. 1078 (1986), a case in which a prisoner was shot by a prison guard during an effort to quell a prison disturbance, the Supreme Court equated the standard with conduct which "evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur."  *Id.* at 321.  In short, in order to satisfy the subjective element of the *Wilson* test, the official's conduct "must demonstrate deliberateness tantamount to an intent to punish."  *Hicks v. Frey*, 992 F.2d 1450, 1455 (6th Cir. 1993).

Plaintiff claims that on March 31, 2008 and April 1, 2008, he was subjected to excessive force.  The Eighth Amendment prohibits cruel and unusual punishment, and limits the power of the states to punish those convicted of a crime.  Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley v. Albers*, 475 U.S. 312 (1986), should be applied.  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7.  In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Id.* (citing *Whitley*, 475 U.S. at 321).  Under this standard, even deadly force may be constitutionally appropriate under certain circumstances. *Gravely v. Madden*, 142 F.3d 345, 348 (6th Cir. 1998).

The analysis of the degree of force used must be made in the context of the constant admonitions by the Supreme Court that courts must accord deference to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley*, 475 U.S. at 321-22.  Plaintiff alleges that Plaintiff claims that on March 31, 2008, while being returned to his cell from a misconduct hearing, Defendants Samansky, Fleury and McDonald forced Plaintiff back to his cell, when he resisted.  However, Plaintiff does not claim that he suffered any injuries as a result.  Every malevolent touch by a prison guard does not give rise to an Eighth

Amendment cause of action, *see Hudson v. McMillian*, 503 U.S. 1, 9 (1992), and the prisoner must allege that he sustained more than de minimis injury in order to state a viable excessive force claim. *See id.* at 9-10; *Thaddeus-X v. Blatter*, 175 F.3d 378, 402 (6th Cir. 1999) (en banc).  The short period of physical discomfort suffered by Plaintiff while he was being forced to his cell is not sufficient to state an Eighth Amendment claim.  *See Benson v. Carlton*, No. 99-6433, 2000 WL 1175609, at *1 (6th Cir. Aug. 9, 2000) (whirling sensation in prisoner's head after fear of guard caused him to skip supper constituted a de minimis injury and did not support claim for mental or emotional suffering under the Eighth Amendment); *Scott v. Churchill*, No. 97-2061, 2000 WL 519148, at *2 (6th Cir. April 6, 2000) (plaintiff's claim that guard grabbed his neck and threatened him did not rise to the level of an Eighth Amendment violation).

Plaintiff also claims that on April 1, 2008, he was sprayed with a chemical agent while in his cell despite the fact that he was in handcuffs and suffered from asthma.  The misconduct hearing report, which is attached to Plaintiff's complaint as Exhibit T-1, indicates that on April 1, 2008, Plaintiff was given an order to come to the cell door so the restraints could be removed.  Plaintiff had eye contact with the Sergeant, but failed to comply with the order.  At this point, a chemical agent was used to gain Plaintiff's compliance.

Inmates cannot be permitted to decide which directives they will obey and when they will obey them.  *See Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992).  In circumstances where lawful orders or rules are being disregarded, prison officials are entitled to use a reasonable amount of force to obtain compliance.  *Id.*  "One can quickly reason what would happen in a maximum security prison without proper discipline."  *See Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984).  In an unpublished case, the Sixth Circuit stated:

> Plaintiff was sprayed with gas only after he refused to allow Officer Beesley to place him in restraints. Under these circumstances, the defendants acted reasonably in spraying gas at plaintiff. This allowed them to restrain plaintiff in a more peaceful manner. Therefore, it was plaintiff's own conduct which necessitated the use of the gas.

*Knuckles El v. Koskinen*, No. 97-1642, 1998 WL 415847, at *2 (6th Cir. June 16, 1998). Similarly, Plaintiff's own conduct in refusing to allow officers to remove the handcuffs required the use of force to obtain his compliance.

The decision to use a chemical agent to obtain physical control is generally preferable to the use of physical force. The response team could have attempted a "cell-rush" with shields, truncheons, and handcuffs to forcibly enter Plaintiff's cell in an attempt to subdue and restrain him. Other courts have found that these types of physical confrontations are less safe than using tear gas or mace because of the greater risk of injury to staff, the inmate, or both. *Caldwell*, 968 F.2d at 602; *Soto*, 744 F.2d at 1262. Thus, the Defendants in this action choose to use a lesser degree of force. With regard to Plaintiff's claim that he should not have been gassed because he is an asthmatic, Plaintiff states that he has had difficulty breathing since he was gassed. However, Plaintiff's conclusory assertion is vague and unsupported by any specific factual allegations. Therefore, the fact that Plaintiff was asthmatic does not appear to have been a factor in his injuries. Given the undisputed facts, the decision to use a chemical agent in order to place Plaintiff in restraints did not violate the Eighth Amendment.

Plaintiff also claims that Defendants harassed him by calling him names and by banging on his cell door. Claims of abusive language, or of general harassment, do not state an eighth amendment or substantive due process violation. *Ivey v. Wilson*, 832 F.2d 950 (6th Cir. 1987); *Ishaaq v. Compton*, 900 F. Supp. 935, 944 (W.D. Tenn., 1995); *Meadows v. Gibson*, 855 F.

Supp. 223, 225 (W.D. Tenn., 1994); *Banks v. Klapish*, 717 F. Supp. 520 (W.D. Mich. 1989); *Gilson v. Cox*, 711 F. Supp. 354 (E.D. Mich. 1989); *Rahman v. Stephenson*, 626 F. Supp. 886, 888 (W.D. Tenn. 1986).  Even the occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude. *See*, *Torres v. County of Oakland*, 758 F.2d 147, 152 (6th Cir. 1985).

Plaintiff also claims that Defendant Ollis called him a "rat" and attempted to turn other prisoners against him by implying that Plaintiff was an informant.  Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). To establish a violation of this right, Plaintiff must show that Defendant was deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir.1990); *McGhee v. Foltz*, 852 F.2d 876, 880-881 (6th Cir.1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. County of Medina, Ohio*, 29 F.3d 238, 242-43 (6th Cir.1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.") Plaintiff has failed to allege any facts showing that he was ever in a position to fear for his safety.  Therefore, this claim is properly dismissed.

Plaintiff claims that Defendant Ollis refused to give him his tray on a couple of occasions.  However, Plaintiff also claims that his practice was to refuse to accept a tray whenever Defendant Ollis was serving.  Plaintiff fails to state that he suffered any ill effects as the result of this

conduct.  The denial of a meal on isolated occasions does not rise to the level of an Eighth

Amendment violation.  *Talib v. Gilley*, 138 F.3d 211, 214 n. 3 (5th Cir.1998); *Cunningham v. Jones*,

567 F.2d 653, 659-60 (6th Cir. 1977).  Therefore, this claim is properly dismissed.

Plaintiff claims that Defendant Arkens failed to intervene when an unknown staff

member touched Plaintiff's buttocks.  "[B]ecause the sexual harassment or abuse of an inmate by

a corrections officer can never serve a legitimate penological purpose and may well result in severe

physical and psychological harm, such abuse can, in certain circumstances, constitute the

'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment."  *Freitas v. Ault*,

109 F.3d 1335, 1338 (8th Cir. 1997) (quoted cases omitted).  "To prevail on a constitutional claim

of sexual harassment, an inmate must therefore prove, as an objective matter, that the alleged abuse

or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a

sufficiently culpable state of mind."  *Freitas*, 109 F.3d at 1338 (citing *Hudson v. McMillian*, 503

U.S. 1, 8 (1992)).

Circuit courts consistently have held that sexual harassment, absent contact or

touching, does not satisfy the objective requirement because such conduct does not constitute the

unnecessary and wanton infliction of pain.  *See Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir.

2002) (allegations that prison guard asked prisoner to have sex with her and to masturbate in front

of her and other female staffers did not rise to level of Eighth Amendment violation); *Barney v.

Pulsipher*, 143 F.3d 1299, 1311 n.11 (10th Cir. 1998) (allegations that county jailer subjected female

prisoners to severe verbal sexual harassment and intimidation was not sufficient to state a claim

under the Eighth Amendment); *Howard v. Everett*, No. 99-1277EA, 2000 WL 268493, at *1 (8th

Cir. March 10, 2000) (sexual comments and gestures by prison guards did not constitute unnecessary

and wanton infliction of pain); *cf. Seltzer-Bey v. Delo*, 66 F.3d 961, 962-63 (8th Cir. 1995) (allegations that prison guard conducted daily strip searches, made sexual comments about prisoner's penis and buttocks, and rubbed prisoner's buttocks with nightstick were sufficient to withstand motion for summary judgment); *Zander v. McGinnis*, No. 97-1484, 1998 WL 384625, at *2 (6th Cir. June 19, 1998) (verbal abuse of mouthing "pet names" at prisoner for ten months failed to state an Eighth Amendment claim); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) (magistrate judge correctly held that verbal abuse in the form of offensive remarks regarding a transsexual prisoner's bodily appearance, transsexualism, and presumed sexual preference cannot state an Eighth Amendment claim).  Other courts have held that even minor, isolated incidents of sexual touching coupled with occasional offensive sexual remarks do not rise to the level of an Eighth Amendment violation.  *See, e.g., Jackson v. Madery,* 158 F. App'x 656, 661 (6th Cir. 2005) (correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment);  *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault); *accord Boxer X v. Harris,* 437 F.3d 1107, 1111 (11th Cir. 2006); *Boddie v. Schneider*, 105 F.3d 857, 859-61 (2d Cir. 1997) (court dismissed as inadequate prisoner's claim that female corrections officer made a pass at him, squeezed his hand, touched his penis, called him a "sexy black devil," pressed her breasts against his chest, and pressed against his private parts).

The court concludes that, if true, Defendant Arkens' conduct in ignoring the unwanted touching of Plaintiff's buttocks was reprehensible, but it does not rise to the level of an Eighth Amendment violation. Plaintiff does not allege that Defendant Arkens ever touched him or had form of physical contact with him. Acts of verbal sexual harassment, standing alone, are insufficient to state a claim under the Eighth Amendment. *See Morales*, 278 F.3d at 132; *Zander*, 1998 WL 384625, at *2. Therefore, Plaintiff's allegation fails to state an Eighth Amendment claim against Defendant Arkens.

Plaintiff claims that Defendants Eyke, Mason, and Ollis discussed confidential medical information with staff or in front of other prisoners. These allegations fail to show that Plaintiff's constitutional rights have been violated.

> The Sixth Circuit has expressly held that "the Constitution does not encompass a general right to the nondisclosure of private information." *Jarvis v. Wellman,* 52 F.3d 125, 126 (6th Cir.1995), citing *J.P. v. DeSanti,* 653 F.2d 1080, 1090 (6th Cir.1981). The Sixth Circuit explained that "[i]nferring very broad constitutional rights where the Constitution itself does not express them is an activity not appropriate to the judiciary." *Jarvis,* 52 F.3d at 126. "[O]nly when fundamental rights are implicated does a privacy concern take on constitutional dimensions." *Id.* In *Jarvis* the Court held that the disclosure of a non-inmate's confidential medical records did not violate the plaintiff's constitutional right. *Id.* The Sixth Circuit has specifically applied its holding in *Jarvis* to claims by inmates. *See Doe v. Wigginton,* 21 F.3d 733, 740 (6th Cir.1994) (holding that inmate's constitutional rights were not violated by disclosure of his medical condition); *Coleman v. Martin,* 63 F. App'x 791, 792 (6th Cir.2003) (holding that dissemination of prisoner's mental health records to parole board does not constitute a constitutional violation); *Reeves v. Engelsgierd,* No. 04-71411, 2005 WL 3534096, at *4 (E.D.Mich. Dec. 23, 2005) (holding doctor did not violate prisoner's rights by discussing the plaintiff's medical condition with non-medical staff and in front of other inmates). Because the disclosure of Plaintiff's medical information did not violate the federal constitution, he has failed to state a claim upon which relief can be granted.

- 18 -

*Arrington v. Bahrman*, 2007 WL 3472397, 2 (W.D. Mich. 2007) (unpublished).  Therefore, this claim is properly dismissed.

Plaintiff also alleges that Defendants charged him with misconduct tickets in retaliation for his having filed a grievance and otherwise complained to various authorities. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Thaddeus-X*, 175 F.3d at 394.  Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence.  *See Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (N.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985).  The Sixth Circuit has held that a claim of retaliation brought by a prisoner under § 1983 must be analyzed under the Fourteenth Amendment principles of substantive due process.  *McLaurin v. Cole*, 115 F.3d 408, 410 (6th Cir. 1997); *Cale v. Johnson*, 861 F.2d 943 (6th Cir. 1988).

Claims of retaliation "are especially prone to abuse.  It is easy for a prisoner to allege bad motive and thereby embroil prison officials in protracted yet groundless litigation."  *DeRobertis*, 598 F. Supp. at 506.  "Merely alleging the ultimate fact of retaliation is insufficient."  *Murphy*, 833

- 19 -

F.2d at 108.  Conclusory allegations of retaliatory motive "with no concrete and relevant particulars" fail to raise a genuine issue of fact for trial.  *Salstrom v. Sumner*, No. 91-15689, 1992 WL 72881, at * 1 (9th Cir. Apr. 10, 1992); *see also Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994).  Plaintiff's allegation that Defendants charged him with misconduct tickets in retaliation for plaintiff having complained about him is patently conclusory and unsupported by any specific allegations.

Plaintiff also claims that Defendants Lee and Lindemuth falsified grievance response in retaliation for Plaintiff's use of the grievance system.  Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure.  *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).  Michigan law does not create a liberty interest in the grievance procedure.  *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).  Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.  Moreover, an adverse response to a grievance is insufficient to constitute an adverse action and Plaintiff fails to state a claim for retaliation.

Plaintiff's claims against Defendant Maki are precluded by absolute judicial immunity since the alleged acts were committed in the performance of her duty as a hearing officer in a prison disciplinary hearing.  *See Shelley v. Johnson*, 849 F.2d 228, 230-31 (6th Cir.1988).

Finally, liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept.*

- 21 -

*of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Bergh, Contreras, Trierweiler, Lesatz, Castello, Parkilla, and Caruso were personally involved in the activity which forms the basis of his claim. Defendants Bergh, Contreras, Trierweiler, Lesatz, Castello, Parkilla, and Caruso's only roles in this action involve the denial of administrative grievances or the failure to act. Defendants Bergh, Contreras, Trierweiler, Lesatz, Castello, Parkilla, and Caruso cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264, 120 S. Ct. 2724 (2000). Accordingly, the Court concludes that Plaintiff's claims against Defendants Bergh, Contreras, Trierweiler, Lesatz, Castello, Parkilla, and Caruso are properly dismissed for lack of personal involvement.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the court determines that Plaintiff's action fails to state a claim and will therefore be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A(b); 42 U.S.C. § 1997e(c).

The court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611

(6th Cir. 1997).  For the same reasons that the court dismisses the action, the court discerns no

good-faith basis for an appeal.  Should Plaintiff appeal this decision, the court will assess the

appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is

barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is

barred, he will be required to pay the appellate filing fee in one lump sum.

       This dismissal counts as a strike for purposes of 28 U.S.C. § 1915(g).

       A judgment consistent with this opinion will be entered.


Dated:    4/23/09                          */s/ R. Allan Edgar*
                                               R. ALLAN EDGAR
                                             UNITED STATES DISTRICT JUDGE